## NORTH HAVEN ASSOCIATION OF EDUCATIONAL SUPPORT STAFF *v.* BOARD OF EDUCATION OF THE TOWN OF NORTH HAVEN (13404)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued October 11—decision released December 6, 1988

*W. Paul Flynn,* with whom, on the brief, were *Charles L. Flynn* and *Howard A. Lawrence,* for the appellant (plaintiff).

*Anthony J. Palermino,* with whom was *Gary R. Atkinson,* for the appellee (defendant).

GLASS, J. The sole issue in this appeal is whether, under General Statutes § 52-417,[1] the trial court properly refused to confirm an advisory arbitration award.

The plaintiff, North Haven Association of Educational Support Staff (association), represents certain employees of the defendant board of education of the town of North Haven (board), including the grievant, Marie Freitag. In May, 1986, Freitag, then employed as a library aide in the North Haven school system, applied for the newly created position of computer operator/clerk. Freitag had participated in the school system's program to acquire computer operator skills, and had completed a twelve week computer training course under the school system's aegis. Ultimately, however, a candidate with less seniority than Freitag was selected for the new position.

On June 18, 1986, the association filed a grievance on Freitag's behalf. Pursuant to the parties' collective

---

[1] "[General Statutes] Sec. 52-417. APPLICATION FOR ORDER CONFIRMING AWARD. At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

bargaining agreement, the grievance was submitted for arbitration to the Connecticut state board of mediation and arbitration. The submission was as follows: "Was the promotion denial of Marie Freitag by the Board of Education in violation of . . . the collective bargaining agreement? If so, what shall the remedy be?" On April 8, 1987, the arbitrators made an award in favor of Freitag, on the ground that the board had failed in its evaluation process to consider Freitag's seniority as required by the bargaining agreement. The award provided: "Ms. Freitag is to be appointed to the position of Computer Operator . . . within 30 days from the date of this award."

The board, however, refused to appoint Freitag to the position. On August 5, 1987, the association applied to the trial court to confirm the arbitration award, pursuant to General Statutes § 52-417. On January 5, 1988, the trial court dismissed the application, concluding that, under the terms of the bargaining agreement, the award was advisory only and, therefore, could not be confirmed under § 52-417. The association appealed the trial court's denial of its application to the Appellate Court on January 15, 1988. The appeal was transferred to this court pursuant to Practice Book § 4023.

On appeal, the association claims error in the trial court's conclusion that the language of the bargaining agreement precluded the court from confirming the award.[2] We find no error.

[2] On January 1, 1988, Freitag was appointed to the position of library clerk in the North Haven school system. In its brief and in a subsequent motion filed in this court, the board moved to dismiss the association's appeal as moot, arguing that Freitag's new position was comparable in pay and status to the position that was the subject of the grievance. At oral argument, however, the board conceded that a ruling in favor of the association on appeal might entitle Freitag to recover the salary differential accruing after the board had refused to follow the arbitrators' award. As a consequence, this appeal is not moot.

The critical language of the parties' bargaining agreement provides: "The Connecticut State Board of Mediation and Arbitration shall serve as the arbitrators acting under its rules and regulations. The decision of the arbitrators shall be advisory. The arbitrators shall have no authority to amend, modify, alter, subtract from or add to this Agreement."

The trial court found that, absent a waiver by the parties, any arbitration decision under the agreement would be advisory and nonbinding. The court ruled that because the award was not binding, it had no authority to confirm the award under § 52-417. We agree with the trial court's conclusion.

"The principles governing the arbitration of disputes are well established. Because arbitration is a 'creature of contract,' the parties themselves ordinarily determine the issues to be decided and define the scope of the arbitrator's power. *Administrative & Residual Employees Union* v. *State,* 200 Conn. 345, 348, 510 A.2d 989 (1986); *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 341, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 20, 453 A.2d 1158 (1983)." *Masters* v. *Masters,* 201 Conn. 50, 70, 513 A.2d 104 (1986). *"The authority to arbitrate is strictly limited by the provisions of the collective bargaining agreement* and the scope of the matter to be considered by the arbitrators is limited by the submission. *Board of Police Commissioners* v. *Maher,* 171 Conn. 613, 621, 370 A.2d 1076 (1976)." (Emphasis added.) *Board of Education* v. *AFSCME,* 195 Conn. 266, 271, 487 A.2d 553 (1985).

The parties' collective bargaining agreement provided that arbitration awards would be advisory. This language permitted either party to decline to follow any arbitration decision. " 'Courts of law must allow par-

ties to make their own contracts, and can enforce only such as they actually make. Whether the [arbitration] contract is wise or unwise, reasonable or unreasonable, is ordinarily an immaterial inquiry.' " *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591, 595, 96 A.2d 209 (1953).

The association, however, argues that by agreeing to the unrestricted submission, the board agreed to be bound by the award. It claims that the "advisory" language of the bargaining agreement was a procedural limitation on the arbitrators' authority. As such, it asserts that the limitation implicated the arbitrability of the dispute itself. The association maintains that the board's failure to raise the issue either before the arbitrators or by an action for injunctive relief in the courts operated as a waiver of the limitation. See *Policemen's & Firemen's Retirement Board* v. *Sullivan,* 173 Conn. 1, 6, 8–9, 376 A.2d 399 (1977); *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* 168 Conn. 54, 63, 357 A.2d 466 (1975). We disagree.

A party's submission to arbitration may constitute a waiver as to the arbitrability of the dispute. *Board of Trustees* v. *Federation of Technical College Teachers,* 179 Conn. 184, 192, 425 A.2d 1247 (1979). The question of the efficacy of the "advisory" award provision, however, concerns the nature of the award rather than the arbitrability of the dispute. Consequently, even if, under the present agreement, a party could waive an objection to a dispute's arbitrability by not raising it prior to the arbitration proceedings; see *Paranko* v. *State,* 200 Conn. 51, 58, 509 A.2d 508 (1986); *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* supra; the arbitrability of the dispute is not at issue in this case. By stating that arbitration awards would be advisory, the agreement provided the arbitrators with the authority to issue nonbinding awards, and nothing more. *Board of Education* v.

*AFSCME,* supra, 271. The parties did not expressly waive this provision in agreeing to the submission. Nor was the board required expressly to reserve that which had already been explicitly provided for in the agreement.[3] Cf. *Board of Trustees* v. *Federation of Technical College Teachers,* supra (by agreeing to unrestricted submission, party does not waive claim that award itself violates statutes or regulations).

Similarly, the association argues that, because the arbitrators' authority to modify the agreement was also an issue for the arbitrators to decide, the board should have raised the question of the advisory nature of the award before arbitration began. The association's argument suggests that the initiation of arbitration under the unrestricted submission automatically converted the contract's express term "advisory" into the term "binding" or "final," and that the board consequently had the obligation to object to such a "modification." We are not persuaded.

Ordinarily, where the authority to arbitrate devolves from contract, an unrestricted submission carries with it the power to decide, with finality, all issues of fact or law in the proceedings. *Wilson* v. *Security Ins. Group,* 199 Conn. 618, 626, 509 A.2d 467 (1986); *Meyers* v. *Lakeridge Development Co.,* 173 Conn. 133, 135, 376 A.2d 1105 (1977); see also *Stratford* v. *Local 134, IFPTE,* 201 Conn. 577, 584, 519 A.2d 1 (1986). Under the terms of the agreement in the present case, however, the arbitrators could not have rendered anything

---

[3] The association also claims that, because the agreement did not define the term "grievance," that term should be defined, according to case law, as " 'the voluntary submission, by the interested parties, of an existing or future dispute to a disinterested person or persons for final determination.' *Gores* v. *Rosenthal,* 150 Conn. 554, 557, 192 A.2d 210 [1963]." *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 121, 318 A.2d 84 (1972). As noted above, however, the parties in this case expressly agreed that any arbitration award would be advisory. The definition in *Gary Excavating, Inc.,* therefore, is not controlling.

but an advisory award. The submission, therefore, could not "carry" to the arbitrators the authority to render a binding award. We also note that although the award was phrased in mandatory terms, the arbitrators did not state that they intended the award to supersede the advisory award provision of the agreement.

We also disagree with the association's further argument that the trial court improperly used the association's application to confirm the award under § 52-417 as a vehicle for vacating the award under General Statutes § 52-418 (a) (4).[4] Relying on *Board of Education v. Bridgeport Education Assn.,* 173 Conn. 287, 291, 377 A.2d 323 (1977), and *Norwich Roman Catholic Diocesan Corporation v. Southern New England Contracting Co.,* 164 Conn. 472, 477, 325 A.2d 274 (1973), the association asserts that the trial court's resort to the language of the bargaining agreement was contrary to the settled law that courts will only examine the submission and the award to determine whether the arbitrators have exceeded their powers. By referring to the contract, the association contends, the court improperly "second-guessed" the arbitrators by determining whether certain language in the written agreement would support or defeat the claim. See *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 585, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); *American Universal Ins. Co. v. DelGreco,* 205 Conn. 178, 186, 530 A.2d 171 (1987).

---

[4] "[General Statutes] Sec. 52-418. VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

We first note that the trial court in this case did not "vacate" the arbitration award under § 52-418. The trial court dismissed the association's application to confirm the award under § 52-417. As the board correctly points out, the board was not obligated to seek to vacate the award under § 52-418 since the language of the agreement itself permitted it to elect not to implement the award.

Second, the association's reliance on *Bridgeport Education Assn.* and *Norwich Roman Catholic Diocesan Corporation* is misplaced. Those cases hold that, under § 52-418 (a) (4), the trial court's review of whether the arbitrators exceeded their powers is limited to a comparison of the award with the submission. See *Board of Education* v. *Bridgeport Education Assn.,* supra, 290–91 (in deciding whether arbitrators have exceeded their powers under § 52-418, courts need only examine submission and award); *Norwich Roman Catholic Diocesan Corporation* v. *Southern New England Contracting Co.,* supra, 477 (under § 52-418, review limited to comparing award with submission). As we have noted above, § 52-418 is not in issue in this case.

Moreover, the language of *Bridgeport Education Assn.* and *Norwich Roman Catholic Diocesan Corporation* upon which the association relies does not encompass the entire scope of our decisions in this area. The trial court is not in all circumstances limited to a comparison of the award with the submission under § 52-418. "[T]he mere conformity of the submission to the award does not foreclose the court from reviewing whether that award is in violation of the parties' agreement." *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* supra, 63. Consequently, even if we assume, arguendo, that the trial court's dismissal of the application implicated § 52-418 (a) (4), the court's reference to the bargaining agreement was not improper. If, as the association contends, the arbitra-

tors purported to issue a "final" or "binding" award, that action would have violated the parties' agreement. The board, of course, could not have "waived" an objection to such an action by failing to raise the issue during the proceedings since it could not have anticipated that the arbitrators would depart from the terms of the agreement. Cf. *Waterbury Board of Education* v. *Waterbury Teachers Assn.*, supra.

Finally, we acknowledge that § 52-417 states in part that "[t]he court . . . shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."[5] It is axiomatic, however, that courts may not decree what they cannot enforce. "It is not [the courts'] function to render opinions which are simply advisory." *Pellegrino* v. *O'Neill*, 193 Conn. 670, 683, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984). The court in the present case had no power to confirm the award under § 52-417 since, under the terms of the parties' agreement, the court could not enforce it. Moreover, our previous decisions indicate that the mandatory confirmation of an award that is not vulnerable under §§ 52-418 and 52-419 is predicated on an award that is final and binding under the collective bargaining agreement. See, e.g., *Interna-*

---

[5] "[General Statutes] Sec. 52-419. MODIFICATION OR CORRECTION OF AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated, or, when the court is not in session, any judge thereof, shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy.

"(b) The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

*tional Brotherhood of Teamsters* v. *Trudon & Platt Motor Lines, Inc.,* 146 Conn. 17, 21, 147 A.2d 484 (1958) (arbitration award under agreement providing for final and binding award must be confirmed unless vulnerable to attack under separate statutory grounds); see also *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* supra, 594–95 (agreement provided that award would be final and binding).[6]

We conclude that the trial court did not err in refusing to confirm the advisory arbitration award under General Statutes § 52-417.

There is no error.

In this opinion the other justices concurred.

---

[6] In oral argument, counsel for the association asserted that the Connecticut state board of mediation and arbitration (state board) cannot, under its rules and regulations, issue nonbinding or advisory awards. Thus, the association claimed, the contract language purporting to endow the state board with that function is a nullity. We disagree.

The association has not pointed to any specific statutory or regulatory provision prohibiting the state board from rendering advisory awards. See General Statutes § 31-91 et seq.; Regs., Conn. State Agencies § 31-91-1a et seq. Section 31-91-44 of the regulations defines "award" without such a limitation. Moreover, § 31-91-23 of the regulations provides: "(a) A grievance or dispute will be heard by the board when *any* of the following conditions is met: (1) The board is specifically named as arbitrator within a collective bargaining agreement *or*; (2) The parties to the dispute submit in writing their mutual request for arbitration and mutual agreement to be bound by the board's decision. . . . " (Emphasis added.) In this case, the state board's participation as arbitrator arose, under subsection (a) (1), from the language of the collective bargaining agreement naming it as arbitrator. Significantly, in contrast with subsection (a) (2), subsection (a) (1) does not state that the collective bargaining agreement must provide for binding arbitration.